Summers, J.
This is an action to recover damages for personal injuries. The plaintiff was driving a white horse which frightened at a red cow, at large on the public highway, and upset the buggy in which she was riding. The accident happened in the day time. The cow was lying *69 cater-cornered across the traveled way in front of the defendant’s farm. The plaintiff, a widow lady 77 years of age, says that it was a very bright, pretty day and that she was driving east, on the Sidney pike, to the city of Bellefontaine; that she saw the cow lying in the road, some distance ahead, that, “The horse was walking and I was humming along, just alone.” “I had to drive around her; just went to drive around her, but I didn’t. When I got just to her head, she made a lunge to get up and my horse reared on his hind feet, reared around and took up the side of the bank and threw me out on the side and cut my head, as you can see.”
The plaintiff was badly hurt. The trial court directed a verdict for the defendant, for the reason, it is said, that the petition did not state a cause of action, and the circuit court affirmed for the reason that the plaintiff was guilty of contributory negligence.
Counsel for plaintiff in error call attention to the fact that contributory negligence was not set up as a defense and contend that the judgment cannot be sustained on that ground. The defendant. offered no evidence, and if the evidence offered on the part of the plaintiff raised a presumption of negligence on her part contributing directly to her injury then the court properly directed the verdict. A cow, unlike a horse, gets up first on her hind legs, and in doing so appears to lunge forward, and it was to be expected that the horse would, under the circumstances, try to give the cow plenty of room. The circuit court took judicial notice of the fact that one never can tell *70 what an old cow will do, and so concluded that the plaintiff was negligent in driving so closely to her.
At common law it was the duty of the owner of cattle.to fence them in, but in this state it was not his duty to do so, until made so by statute. The burden was upon the occupier of the land to fence them out. The reason for the distinction was that here at an early day but a very small part of the soil was under cultivation and it much better suited the condition of the people and was - a lighter burden on them to enclose the land for the purpose of cultivation and to fence against the animal's running at large. The C. H. & D. R. R. Co. v. Waterson & Kirk, 4 Ohio St., 424; Kerwhacker v. C. C. & C. R. R. Co., 3 Ohio St., 172; Marietta & Cincinnati R. R. Co. v. Stephenson & Brown, 24 Ohio St., 48. But conditions changed, the larger part of the land having been brought under cultivation the public welfare required that the burden be transferred to the owners of the cattle.
Accordingly in 1865 an act was passed making it unlawful to suffer cattle to run at large. There had been previously to that time, laws respecting animals running at large, estrays, fences and enclosures, but it is not necessary to notice them. The act of 1865 has been carried into the Revised Statutes and for the present it is sufficient to refer to Sections 4202, 4206 and 4251. Section 4202 makes it unlawful for any owner of cattle to suffer the same to run at large in any public road or highway and prescribes a penalty therefpr. Section 4206 provides that the owner shall be liable for *71 all damages done by such animal upon the premises of another without reference to the fence that may enclose the premises, and Section 4251 provides that if any cattle running at large break into or enter any enclosure, other than enclosures of railroads, the owner of any such animal shall be liable to the owner or occupant of such enclosure for all damages occasioned thereby.
At common law the owner of cattle did not owe to travelers on the highway the duty to prevent his cattle from being at large upon the highway, but if that had been his duty the common law would have afforded the traveler a remedy by an action in damages against the owner for the injuries he sustained because of the owner’s negligence- in the performance of that duty; and so it is held in numerous cases that when it is made unlawful for cattle to be at large in the highway that the owner owes such a duty to the traveler, and that he is entitled to the common law remedy in damages although the only remedy given by the statute is a penalty not made payable to the party injured.
It is so held in Shipley v. Colclough, 81 Mich., 624, where one of two cows, that were running at large in the highway contrary to law, hooked and pushed the other against and under , the wheel of a sulky, that was being driven along the highway, over-turning and injuring the vehicle. The decision is based upon the following statement of the law. “The violation of any statutory or valid municipal regulation, established for the purpose of protecting persons or property from injury, is of itself sufficient to prove such a breach *72 of duty as will sustain a private action for negligence, if the other elements of actionable negligence concur, 1 Shear. & R. Neg., § 13.
“These principles apply not only where the statute or ordinance declares that persons violating it shall be liable for any damages sustained by reason of its breach, but also where it contains no such provisions, and simply imposes a penalty, by way of fine or otherwise, for disobedience. Nor is the plaintiff, in such a case, bound to prove that the act required by the law was one which by its nature was essential to the exercise of due care by the defendant. Id.”
A similar case is Jewett v. Gage, 55 Me., 538, where the plaintiffs wagon and minor child were injured by his horse taking fright at a hog lying by the side of the highway. And in Bott v. Pratt, 33 Minn., 323, where a team of horses, that had been left standing unfastened and unguarded in violation of a city ordinance, ran away and caused injury to a traveler on the streets.
The law is stated as follows in Cooley on Torts (3 ed.), 1399, “Where the statute imposes a new duty, where none existed before, and gives a specific remedy for its violation, the presumption is, that this remedy was meant to be exclusive, and the party complaining of a breach is confined to it * * *. So if performance of a duty is enjoined under a penalty, the recovery of this penalty is in general the sole remedy, even when it is not made payable to the party injured. But the rule is not without its exception; for if a plain duty is imposed for the benefit of individuals, and the penalty is obviously inade *73 quate to compel performance, the implication will be strong if not conclusive, that the penalty was meant to be cumulative to such remedy as the common law gives when a duty owing to an individual is neglected.”
The cases above cited seem to make the exception the rule.
In Couch v. Steel, 3 El. & B., 402, Lord Campbell laid down the rule that wherever a statutory duty is created, any person who can show that he has sustained injuries from the non-performance of that duty can bring an action for damages against the person on whom the duty is imposed, but in Atkinson v. New Castle & Gateshead Water Works Co., L. R., 2 Ex. Div., 441, the judges, Carins, L. C, Cockburn, C. J., and Brett, L. J., each of them doubted its correctness. They expressed the opinion that the correctness of the rule “must, to a great extent, depend on the purview of the legislature in the particular statute, and the language which they have there employed.”
In Cowley v. The Newmarket Local Board (1892), A. C., 345, Lord Herschell expressly concurs in the opinion expressed by Lord Cairns.
In Gorris v. Scott (1874), 9 Ex., 125, in an action to recover for loss of sheep washed overboard, in consequence of there being no pens and no battens or foot-holds, as required by certain regulations adopted under authority of the Contagious Diseases Act, it is held, “That the object of the statute and the order being to prevent the spread of contagious diseases among animals, and not to protect them against perils of the sea, the *74 plaintiffs could not recover.” And again, “When ' a statute. creates a duty with the object of preventing a mischief of a particular kind, a person who, by reason of another’s neglect of the statutory duty, suffers a loss of a different kind, is not entitled to maintain an-action in respect of such loss.”
Looking to the statute and the previous legislation in this state it cannot be said that the object was to provide for the safety of travelers upon the highway; the object was to prevent trespasses upon the premises of others. The remedy in damages given by Section 4251, Revised Statutes, was not entirely satisfactory. In many, if not in most, instances of trespass the injury was slight and the amount of damages recovered would not equal the amount expended in recovering it, to say nothing of the inconvenience and the animosities engendered, and so in addition to the liability for the injury done by cattle running at large upon the premises of another, without reference to the fence that enclosed them, it was made unlawful for the owner to suffer them to run at large, and it was made the duty of public officers, on view or information that cattle were running at large, to take them up and confine them, and if an officer wilfully neglected his duty in that respect he was liable to a fine and imprisonment.
In the absence of the statute it is the duty of the owner not to suffer a known vicious animal to run at large upon the highway, or one not vicious under circumstances where he should *75 apprehend that the safety of travelers would be in danger.
In Dickson v. McCoy, 39 N. Y., 400, it is held: “It is such negligence for the owner of a horse to turn him loose, to go from the stable into the street of a city, unattended, as will make him liable for all injuries occasioned thereby.” In Wasmuth v. Butler, 93 N. Y. Su. Ct. Rep., 1, it is held that it is actionable negligence to leave a horse untied and unattended in the streets of a city. In Goodman v. Gay, 15 Pa. St., 188, it is held: ■ “If the owner of a horse suffers it to go at large in the streets of a populous city, he is answerable for a personal injury done by it to an individual without proof that the owner knew that the horse was vicious.”1 In Barnes v. Chapin,. 4 Allen, 444, Chapman, J., states the rule thus: “The general doctrine of the common law as to injuries done by domestic animals seems to be, that the owner is not liable unless he has been in some fault. Pie is liable for their trespasses when it was his duty to confine them, and he has neglected to do so. In Leame v. Bray, 3 East, 595, Lord Ellenborough says, Tf I put in motion a dangerous thing, as if I let loose a dangerous animal, and leave to hazard what may happen, and mischief ensue to any person, I am answerable in trespass.'"
Zumstein v. Shrumm, 22 Ont. App. Rep., 263, is a case not unlike the case under consideration and it was there held, “The owner of a turkey cock which without negligence strays upon the highway contrary to a by-law of the municipality, is not liable for damages resulting from a horse *76 taking fright and running away at the sight of the bird acting as turkey cocks usually do.”
The object of the statute not being the safety of travelers on the highway, the petition does not state a cause of action in the absence of an averment of facts implying that the injuries resulted from the negligence of the defendant in the performance of a duty owing to the plaintiff, and the court of common pleas properly directed a verdict.

Judgment affirmed.

Shauck, C. J., Price, Crew, Spear and Davis, JJ-, concur.